**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

JEFFERSON BEACH HOUSE             Civil No. 13-6480 (NLH/KMW)
CONDOMINIUM ASSOCIATION

              Plaintiff,             **OPINION**

    v.

HARLEYSVILLE INSURANCE
COMPANY OF NEW JERSEY,

              Defendant.

---

**APPEARANCES:**
Ross G. Currie, Esquire
Dinsmore & Shohl LLP
1200 Liberty Ridge Drive, Suite 310
Wayne, Pennsylvania 19087
    *Attorney for Plaintiff Jefferson Beach House Condominium*
    *Association*

Benjamin Evan Gordon, Esquire
Stradley Ronon Stevens & Young LLP
2005 Market Street
Suite 2600
Philadelphia, Pennsylvania 19103
    *Attorney for Defendant Harleysville Insurance Company of*
    *New Jersey*

**<u>HILLMAN, District Judge</u>**

    This matter comes before the Court by way of Defendant

Harleysville Insurance Company of New Jersey's motion [Doc. No.

8] to dismiss Plaintiff's complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) for failure to state a claim upon which

relief can be granted.  Plaintiff Jefferson Beach House

Condominium Association (hereinafter, "the Association") opposes Defendant's motion.  The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendant's motion to dismiss will be granted in part and denied in part.


I.   **JURISDICTION**

In this action, the Association asserts a single count for breach of contract based on Defendant Harleysville Insurance Company of New Jersey's alleged wrongful denial of insurance coverage for damage caused in the aftermath of Hurricane Sandy in the fall of 2012.  The Court has subject matter jurisdiction over the Association's breach of contract claim pursuant to 28 U.S.C. § 1331, as the controversy arises under the laws of the United States, including the National Flood Insurance Act, 42 U.S.C. § 4001 and 42 U.S.C. § 4072.  See also Van Holt v. Liberty Mut. Fire Ins. Co., 163 F.3d 161, 167 (3d. Cir. 1998) (holding that "42 U.S.C. § 4072 vests district courts with original exclusive jurisdiction over suits by claimants against [Write Your Own insurance] companies based on partial or total disallowance of claims for insurance arising out of the National Flood Insurance Act").

II.  <u>**BACKGROUND**</u>

The Association's claims in this action arise from the partial denial of an insurance claim by Defendant Harleysville Insurance Company of New Jersey (hereinafter, "Harleysville") under a policy Harleysville issued through the National Flood Insurance Program. (Compl. [Doc. No. 1] ¶¶ 10, 19-20.)  As the Third Circuit has explained, the National Flood Insurance Program ("NFIP") is "a federally supervised and guaranteed insurance program presently administered by the Federal Emergency Management Agency ('FEMA') pursuant to the [National Flood Insurance Act of 1968] and its corresponding regulations." <u>Van Holt</u>, 163 F.3d at 165 (citing 44 C.F.R. §§ 59.1–77.2).  The NFIP essentially "guarantees and subsidizes flood insurance." <u>Brusco v. Harleysville Ins. Co.</u>, No. 14-914, 2014 WL 2916716, at *1 (D.N.J. June 26, 2014).

"In 1983, pursuant to regulatory authority granted by Congress in 42 U.S.C. § 4081(a), FEMA created the 'Write Your Own' ('WYO') program."  <u>Van Holt</u>, 163 F.3d at 165 (citing 44 C.F.R. §§ 62.23–.24).  The WYO program authorizes "private insurance companies like [Harleysville] [to] write their own insurance policies." <u>Van Holt</u>, 163 F.3d at 165 (citing 44 C.F.R. § 62.23).  Through the WYO program, Harleysville and other private insurance companies, "administer[] standard form policies, pay[] any excess from premiums to the federal

government, and act[] as 'fiscal agents' of the United States."[1]
Brusco, 2014 WL 2916716, at *1 (citing 44 C.F.R. § 62 App. A
(2013)).  WYO companies "remit the insurance premiums to the
Flood Insurance Administration ('FIA')" but they "may keep funds
required to meet current expenditures, which are limited to five
thousand dollars."  Van Holt, 163 F.3d at 165 (citing 44 C.F.R.
Pt. 62, App. A., Art. VII(B)).  "When WYO companies deplete
their net premium income, a phenomenon that occurs regularly
because the companies must forfeit a significant portion of the
proceeds from premiums, they draw money from FEMA through
letters of credit to disburse claims."  Van Holt, 163 F.3d at
165 (citing 44 C.F.R. Pt. 62, App. A, Art. IV(A)).  Accordingly,
"regardless [of] whether FEMA or a WYO company issues a flood
insurance policy, the United States treasury funds pay off the
insureds' claims."  Van Holt, 163 F.3d at 165.

    In this case, Plaintiff is a condominium association
authorized to act on behalf of the unit owners within the
condominium building located at 120 South Jefferson Avenue in
Margate City, New Jersey.  (Compl. ¶ 9.)  The Association is
the named insured on a Standard Flood Insurance Policy ("SFIP"),

---

[1]    Under the NFIP and the WYO Program, "[a]ll subsidized flood
insurance must be sold as a standard, unaltered policy, and the
terms of the policy are governed by the NFIA and its
corresponding regulations."  Brusco, 2014 WL 2916716, at *1.

Policy Number 99041500582012, issued by Harleysville through the NFIP, operative from January 30, 2012 through January 30, 2013 (hereinafter, "the Jefferson Beach SFIP").  (Id. ¶ 10.)  The Association alleges that on or about October 29, 2012, the residential condominium building described by the Jefferson Beach SFIP sustained direct physical loss and damages due to flooding caused by Hurricane Sandy.  (Id. ¶ 15.)  Specifically, the Association asserts that the resulting flooding from Hurricane Sandy caused "damage to the parking garage, necessitating the removal and replacement of four (4) storm damaged glass block window panels and one (1) masonry block wall on the east elevation of the building."  (Id. ¶ 16.)  The Association obtained a proposal from Dean Adams Custom Builder, LLC,[2] Proposal No. 008-13, (hereinafter, "the Dean Adams Proposal"), regarding these damages which estimated the cost of repairs to be approximately $33,264.00.  (Id. ¶ 16.)

The Association alleges that it submitted a timely claim to Harleysville for the damages caused by the flooding related to Hurricane Sandy, including those damages covered by the Dean

---

[2]    The complaint indicates that the quote for repairs was from "Quality Coastal Homes."  (Compl. ¶ 16.)  Attached to the complaint as Exhibit B [Doc. No. 1-3] is a copy of Proposal #008-13.  It appears that "Quality Coastal Homes" is a merely a slogan or description utilized by the business that submitted Proposal #008-13 - Dean Adams Custom Builder, LLC.  The header of the proposal specifically says "Dean Adams Custom Builder, LLC" and the same is used as the business's website.

Adams Proposal.  (Id. ¶ 17.)  According to the complaint, on or about November 11, 2012, Harleysville inspected the property through independent adjuster Edward Adkins.  (Id. ¶ 18.)  The Association alleges that Mr. Adkins generated an estimate of the damages after his inspection which did not include repairs for the damages sought by the Association in the Dean Adams Proposal.  (Id.)  The complaint explains that Harleysville paid damages in the amount of $22,702.00 according to Mr. Adkins's estimate on April 11, 2013.  (Id.)  The Association contends that on April 11, 2013 Harleysville also issued a partial denial letter to the Association denying coverage for the damages to the glass block window panels and masonry block wall.[3]  (Id. ¶ 20.)  The Association claims that, as evidenced by the letter, "Harleysville's denial of coverage was based on certain coverage limitations" set forth in the Jefferson Beach SFIP.  (Id.)

In this case, the Association contends that the Jefferson Beach SFIP represents a valid and binding contract between the Association and Harleysville under which Harleysville promised and had a duty to provide insurance coverage for all direct physical loss by or from flood in exchange for the Association's payment of premiums and fulfillment of certain other conditions

---

[3]    A copy of Harleysville's April 11, 2013 partial denial letter is attached to the complaint as Exhibit C.

contained in the Jefferson Beach SFIP.  (<u>Id.</u> ¶ 24.)  The
Association represents that it met all relevant conditions
required to obtain insurance coverage under the Jefferson Beach
SFIP, but that Harleysville breached the parties' contract by
"failing to compensate Plaintiff for the damages" reflected in
the Dean Adams Proposal for the glass block window panels and
the masonry block wall.  (<u>Id.</u> ¶¶ 25-26.)

## III. <u>DISCUSSION</u>

Harleysville now moves to dismiss the Association's
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).
In considering a motion to dismiss a complaint for failure to
state a claim upon which relief can be granted pursuant to Rule
12(b)(6), a court must accept all well-pleaded allegations in
the complaint as true and view them in the light most favorable
to Plaintiff.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir.
2005).  It is well settled that a pleading is sufficient if it
contains "a short and plain statement of the claim showing that
the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claims[.]'"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 563 n.8
(2007) (quoting <u>Scheuer v. Rhoades</u>, 416 U.S. 232, 236 (1974));

see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the Plaintiff has a 'plausible claim for relief.'"  Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950).  "[A] complaint must do more than allege the plaintiff's entitlement to relief."  Fowler, 578 F.3d at 211; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556).  "The defendant bears the burden of showing that no claim has been presented."  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

8

**IV.  <u>ANALYSIS</u>**

In the instant motion, Harleysville seeks the dismissal of all of the Association's claims.  With respect to Count I, Harleysville challenges the sufficiency of the complaint to establish a claim for breach of contract under federal law. Specifically, Harleysville argues that the Association does not state a claim for breach of contract because the parking garage located below the first elevated level of the condominium building is an "enclosure" which is thus subject to expressly limited coverage as set forth in the Jefferson Beach SFIP[4] at Section III(A)(8).  (Mem. of Law of Defendant Harleysville in Supp. of Mot. to Dismiss Compl. Pursuant to Rule 12(b)(6) [Doc. No. 8-1] (hereinafter, "Harleysville's Mem."), 9).  Harleysville takes the position that it appropriately denied coverage for the damaged glass block window panels and the masonry block wall on the east elevation of the building because these "damaged items

---

[4]  As noted <u>supra</u>, under the NFIP and the WYO Program, "[a]ll subsidized flood insurance must be sold as a standard, unaltered policy, and the terms of the policy are governed by the NFIA and its corresponding regulations."  <u>Brusco</u>, 2014 WL 2916716, at *1. With respect to residential condominium buildings, Appendix A(3) to 44 C.F.R., Pt. 61, sets forth the terms of the Standard Flood Insurance Policy – Residential Condominium Building Association Policy ("SFIP-RCBAP").  The Court notes that the Jefferson Beach SFIP referred to throughout this Opinion and attached as Exhibit A to the complaint is a SFIP-RCABP issued pursuant to the NFIA and in accordance with its regulations.

are located in a parking garage below the lowest elevated level"
of the building, and these items do not fall within the limited
coverage provided for by Section III(A)(8)(a)(1)-(17).  (Id.)
Accordingly, Harleysville contends it did not breach the
insurance contract at issue.  (Id. at 6-9.)

In addition to its breach of contract claim, the
Association also seeks attorney's fees and costs, and all other
legal and equitable relief the Court deems appropriate.
Harleysville argues that the Association cannot recover
attorney's fees, costs, or any other legal or equitable relief
because such relief is outside the scope of the coverage
provided for in the Jefferson Beach SFIP and such claims are
preempted by federal law.  (Harleysville's Mem. 10-13.)

## A.  The Association's Breach of Contract Claim

Federal common law governs the interpretation of SFIPs
issued pursuant to the National Flood Insurance Program.  Linder
& Assocs., Inc. v. Aetna Cas. & Sur. Co., 166 F.3d 547, 550 (3d
Cir. 1999) ("It is well settled that federal common law governs
the interpretation of the SFIP at issue here.").  Accordingly,
standard insurance law principles are utilized to construe
SFIPs, and under these principles SFIPs are interpreted
according to their plain, unambiguous meaning.  Id.  Where the
policy language is clear, it must be given effect and the court
must refrain from "tortur[ing] the language to create

10

ambiguities." Id.  However, exclusions and ambiguities in SFIPs

are strictly construed against the insurer.  Id.  Thus, where

"the policy is susceptible to two constructions," the Court

"will adopt the one more favorable to the insured.  Id.; see

also Aschenbrenner v. U.S. Fid. & Guar. Co., 292 U.S. 80, 84-85

(1934) (observing that "[t]he phraseology of contracts of

insurance is that chosen by the insurer and the contract in

fixed form is tendered to the prospective policyholder who is

often without technical training, and who rarely accepts it with

a lawyer at his elbow.  So if its language is reasonably open to

two constructions, that more favorable to the insured will be

adopted, and unless it is obvious that the words are intended to

be used in their technical connotation they will be given the

meaning that common speech imports.").  Accordingly, any

ambiguity in the language of the Jefferson Beach SFIP should be

construed in favor of the Association as the insured.

Relevant to deciding the present motion, the Court notes

that the Jefferson Beach SFIP generally "insure[s] against

direct physical loss by or from flood[5] to: [inter alia] 1. The

---

[5]    The Jefferson Beach SFIP defines a "direct physical loss by
or from flood" as "[l]oss or damage to insured property,
directly caused by a flood.  There must be evidence of physical
changes to the property."  (See Jefferson Beach SFIP, Ex. A to
Pl.'s Compl., Section II(B)(12).)

residential condominium building[6] described on the Declarations

Page[7] at the described location,[8] including all units within the

building and the Improvements within the units." (Jefferson

Beach SFIP, Ex. A to Pl.'s Compl. [Doc. No. 1-2], Section

III(A)(1).) The "Building Description" set forth in the

attached Flood Policy Declarations Page describes the property

at issue as "Other Residential Three or More Floors Elevated

with Enclosure High Rise." (Flood Policy Declarations Page, Ex.

A to Pl.'s Compl. [Doc. No. 1-2] 1.)

    The Coverage and Rating section of the Flood Policy

Declarations Page notes, however, that "[t]his is an elevated

building ... [and] [c]overage is limited below the lowest

---

[6]    The Jefferson Beach SFIP defines a "residential condominium building" as a "building, owned and administered as a condominium, containing one or more family units and in which at least 75 percent of the floor area is residential." (See Jefferson Beach SFIP, Ex. A to Pl.'s Compl. [Doc. No. 1-2], Section II(B)(25).)

[7]    The Jefferson Beach SFIP specifies that the "Declarations Page" is "[a] computer-generated summary of information you provided in the application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is part of this flood insurance policy." (See Jefferson Beach SFIP, Ex. A to Pl.'s Compl. [Doc. No. 1-2], Section II(B)(10).)

[8]    The Jefferson Beach SFIP provides that the "Described Location" constitutes "[t]he location where the insured building or personal property are found. The described location is shown on the Declarations Page." (See Jefferson Beach SFIP, Ex. A to Pl.'s Compl. [Doc. No. 1-2], Section II(B)(11).)

elevated floor.  See property not covered in Standard Flood

Insurance Policy."  (Id.)  Section III(A)(8) of the Jefferson

Beach SFIP itself specifically describes the limited coverage

provided for "[i]tems of property in a building enclosure below

the lowest elevated floor of an elevated[9] post-FIRM[10] building

..., or in a basement[11][.]"  This coverage is

> limited to ... [a]ny of the following items, if
> installed in their functioning locations and, if
> necessary for operation, connected to a power
> source: (1) Central air conditioners; (2) Cisterns
> and the water in them; (3) Drywall for walls and
> ceilings in a basement and the cost of labor to
> nail it, unfinished and unfloated and not taped, to
> the framing; (4) Electrical junction and circuit
> breaker boxes; (5) Electrical outlets and switches;
> (6) Elevators, dumbwaiters and related equipment,
> except for related equipment installed below the
> base flood elevation after September 30, 1987; (7)
> Fuel tanks and the fuel in them; (8) Furnaces and
> hot water heaters; (9) Heat pumps; (10)

---

[9]   The Jefferson Beach SFIP defines an "Elevated Building" as
"[a] building that has no basement and that has its lowest
elevated floor raised above ground level by foundation walls,
shear walls, posts, piers, pilings, or columns."  (See Jefferson
Beach SFIP, Ex. A to Pl.'s Compl. [Doc. No. 1-2], Section
II(B)(13).)

[10]   The Jefferson Beach SFIP further defines a "Post-FIRM
Building" as "[a] building for which construction or substantial
improvement occurred after December 31, 1974, or on or after the
effective date of an initial Flood Insurance Rate Map (FIRM),
whichever is later."  (See Jefferson Beach SFIP, Ex. A to Pl.'s
Compl. [Doc. No. 1-2], Section II(B)(22).)

[11]   The Jefferson Beach SFIP sets forth that a "Basement" is
"[a]ny area of the building, including any sunken room or sunken
portion of a room, having its floor below ground level
(subgrade) on all sides."  (See Jefferson Beach SFIP, Ex. A to
Pl.'s Compl. [Doc. No. 1-2], Section II(B)(5).)

> Nonflammable insulation in a basement; (11) Pumps
> and tanks used in solar energy systems; (12)
> Stairways and staircases attached to the building,
> not separated from it by elevated walkways; (13)
> Sump pumps; (14) Water softeners and the chemicals
> in them, water filters, and faucets installed as an
> integral part of the plumbing system; (15) Well
> water tanks and pumps; (16) Required utility
> connections for any item in this list; and (17)
> Footings, foundations, posts, pilings, piers, or
> other foundation walls and anchorage systems
> required to support the building.

(See Jefferson Beach SFIP, Ex. A to Pl.'s Compl. [Doc. No. 1-2],

Section III(A)(8)(a)(1)-(17)); see also 44 C.F.R. Pt. 61, App.

A(3), Art. III(A)(8)(a)(1)-(17).

The coverage dispute between the parties here centers on

whether the damaged glass block window panels and masonry block

wall constitute part of the overall structure of the insured

property or whether they constitute "items of property in a

building enclosure below the lowest elevated floor" such that

the coverage is limited to only specified items.  In partially

denying coverage for the Association's claim, Harleysville's

April 11, 2013 letter notes that the Jefferson Beach SFIP

"limits property covered below the lowest elevated floor of

post-FIRM elevated buildings[.]"  (Harleysville's Denial Letter,

Ex. C to Pl.'s Compl. [Doc. No. 1-4] 1.)  The letter further

explains that Harleysville was "denying payment for all non-

covered property located below the elevated floor, pursuant to

the" Jefferson Beach SFIP.  (Id.)  Specifically, Harleysville's

14

letter explained that "[t]he Independent Adjuster's final report
indicate[d] [the Association] ... requested payment for a block
wall that is not a part of the structure" and accordingly,
Harleysville denied payment for the block wall.  (Id. at 2.)
The Association contends Harleysville's denial was improper
because the damage occurred to exterior portions of the building
that are covered under the Jefferson Beach SFIP because the
damage occurred to the structure itself.

In the present motion, Harleysville asserts that the
Jefferson Beach SFIP "explicitly provides limited coverage ...
for an 'enclosure' below the lowest elevated level of the
subject property[,]" and argues that the parking garage where
the damage occurred clearly falls within the definition of an
"enclosure" in the National Flood Insurance Program Flood
Insurance Manual (the "FIM") issued by FEMA.  (Harleysville's
Mem. 7.)  Accordingly, Harleysville contends that it properly
"denied coverage for the damaged items which are located in a
parking garage below the lowest elevated level and which items
therefore fall outside the express coverage limits of the"
Jefferson Beach SFIP.  (Id. at 9.)  Harleysville argues that it
did not breach the Jefferson Beach SFIP because the Policy
"specifically limits building coverage in the enclosure below
the lowest elevated level of a post-FIRM elevated building to
those items specifically enumerated at" Section III(A)(8)(a)(1)-

15

(17), and the damage did not occur to any items enumerated in that list.

In opposing Harleysville's motion, the Association argues that the coverage limitations set forth in Section III(A)(8) of the Jefferson Beach SFIP "do not preclude the Association's claim for damages to the exterior [of the parking garage], i.e., the actual structure of the Property[.]" (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss [Doc. No. 11] (hereinafter, "Pl.'s Opp'n"), 6.) The Association contends that the "whole point of the [c]omplaint is that the damage was done to the building exterior, i.e., to the parking garage itself, which is clearly and unambiguously part of the actual 'residential condominium building described on the Declarations Page at the described location' and therefore covered under the" Jefferson Beach SFIP. (Pl.'s Opp'n 1-2.) The Association acknowledges that the coverage limitations highlighted by Harleysville apply to certain items of property in an enclosure, but takes the position that the damage in this case "was incurred to the enclosure itself" and is therefore covered under the Jefferson Beach SFIP. (Id. at 2-3.)

The Association further points out that the complaint expressly alleges that the Jefferson Beach SFIP "covers all exterior portions of the building described in the Declarations Page irrespective of whether it is below the lowest elevated

16

floor of the building[.]" (Pl.'s Opp'n 8) (citing Compl. ¶ 14)
(emphasis omitted).  The Association also argues that the
complaint specifically identifies the subject damage to the
parking garage as necessitating "the removal and replacement of
four ... storm damaged glass block window panels and one ...
masonry block wall on the east elevation of the building."
(Pl.'s Opp'n 8) (citing Compl. ¶ 16.)  "These damages – to the
actual exterior structure of the building described in
Declarations Page – do not fall within the coverage limitations"
of Section III(A)(8).  (Pl.'s Opp'n 8.)  According to the
Association, the "masonry wall and window panels were part of
the enclosure itself" and the enclosure, as part of the overall
structure, is explicitly covered under the Jefferson Beach SFIP
as part of the residential condominium building described on the
Declarations Page at the described location.  (Id. 8-9.)[12]

While Harleysville contends that the damaged glass block
window panels and the masonry block wall are not covered under
the Jefferson Beach SFIP because the damage occurred below the
lowest elevated floor of the Association's elevated post-FIRM
building pursuant to Section III(A)(8), the Association has pled

---

[12]    Alternatively, the Association argues that to the extent
the Jefferson Beach SFIP coverage terms are "in any way
ambiguous, the terms of the Policy must be construed in favor of
coverage (i.e., in favor of the Association) and against
Harleysville."  (Pl.'s Opp'n at 6.)

a plausible claim for relief here under Section III(A)(1),
however.  Section III(A)(1) specifically insures "against direct
physical loss by or from flood to ... [t]he residential
condominium building described on the Declarations Page at the
described location[.]"  The attached Flood Policy Declarations
Page, which is expressly included as "part of this flood
insurance policy[,]" describes the residential condominium
building at issue here as "Other Residential Three or More
Floors Elevated With Enclosure High Rise."

Accepting the facts of the complaint as true and viewing
them in the light most favorable to the Association, the
complaint sufficiently alleges that the denied portion of its
insurance claim sought coverage for damages that occurred to the
exterior wall on the east elevation of the building the building
at the parking garage level – specifically glass block window
panels and a masonry block wall.  The Court is satisfied that
the complaint adequately pleads damage to the structure of the
parking garage – an enclosure – which is expressly covered under
the Jefferson Beach SFIP pursuant to the building description on
the Declarations Page.

Moreover, as Harleysville's April 11, 2013 letter makes
clear, the denial of the Association's claim was based, *inter
alia*, on the independent adjuster's determination that the
Association sought "payment for a block wall that [was] not a

part of the structure." (Harleysville's Denial Letter, Ex. C to Pl.'s Compl. [Doc. No. 1-4] 1.) It thus appears that had the adjuster found otherwise, Harleysville would likely have paid the Association claim for these damages as part of the overall structure of the insured building. Taking the facts alleged in the complaint as true and viewing them in the light most favorable to the Association, it appears that the Association is entitled to offer evidence to support the claim that this damage was structural, should have been covered, and Harleysville's denial was a breach of the parties' insurance contract. The complaint sets forth sufficient facts to raise a reasonable expectation that discovery will reveal evidence demonstrating that this damage was structural and should have been covered under the Jefferson Beach SFIP. Accordingly, Harleysville's motion to dismiss Count I of the complaint will be denied.

**B.   Attorney's Fees, Costs, and Other Forms of Relief**

The Association's complaint also seeks attorney's fees and costs, and all other legal and equitable relief which the Court deems to be appropriate. Harleysville similarly seeks to dismiss the Association's request for all such relief. Here, the Jefferson Beach SFIP expressly sets forth that "[t]his policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of

1968, as amended (43 U.S.C. 4001, *et seq.*), and Federal common law." (Jefferson Beach SFIP, Ex. A to Pl.'s Compl. [Doc. No. 1-2], Section X.)  With respect to a request for attorney's fees and costs, Rule 54 of the Federal Rules of Civil Procedure states that "costs against the United States, its officers, and its agencies may be imposed only to the extent allowed by law." FED. R. CIV. P. 54.

Harleysville argues that neither the National Flood Insurance Act, nor the Jefferson Beach SFIP authorize a policyholder to bring an extra-contractual claim against a WYO company for attorney's fees and costs.  (Harleysville's Mem. 11-12.)  Harleysville also points out that multiple courts have found that "absent ... authorization by the NFIA ... or the SFIP, extra-contractual claims cannot succeed against a WYO company."  (Id. at 11.) (citing C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 270 (3d Cir. 2004)).

Multiple courts in this District have reached a similar conclusion.  See, e.g., Messa v. Omaha Property & Cas. Ins. Co., 122 F. Supp. 2d 513, 522 (D.N.J. 2000) (concluding that "plaintiffs are not entitled to receive compensatory, punitive, or consequential damages, or attorney's fees, for alleged bad faith during the National Flood Insurance Program claims handling process, because federal law does not provide for those remedies in this type of case."); 3608 Sounds Ave. Condo. Ass'n

20

v. South Carolina Ins. Co., 58 F. Supp. 2d 499, 502 (D.N.J. 1999) (explaining that "[a]long with the principle that federal law governs claims arising under th[e] [National Flood Insurance] Act, it is also well established that plaintiffs who assert flood insurance claims cannot recover penalties and attorney's fees because federal law preempts such state law claims.") (citing cases). Significantly, the Association readily concedes that the "National Flood Insurance Act does not permit the recover of attorneys' fees as damages in actions against a 'Write Your Own' insurer[.]"[13] (Pl.'s Opp'n 14.) Accordingly, Harleysville's motion will be granted to the extent the Association seeks attorney's fees and costs, and other legal or equitable relief that is not recoverable pursuant to the National Flood Insurance Act.

---

[13] The Association argues, however, that "nothing in the statute precludes awarding attorneys' fees as otherwise provided by law" such as via Federal Rule of Civil Procedure 11(c). (Pl.'s Opp'n 15.) Notwithstanding the dismissal of the Association's request for attorney's fees, costs, and other relief under the National Flood Insurance Act, Federal Rule of Civil Procedure Rule 11(c) authorizes sanctions against a party that violates Rule 11(b), and these sanctions may include attorney's fees. Rule 11 sanctions are imposed at the discretion of the Court, and remain available in this case should the Association have a sufficient basis to bring a motion for such sanctions at a future time consistent with Rule 11.

**V.   <u>CONCLUSION</u>**

For the foregoing reasons, Harleysville's motion to dismiss is granted in part and denied in part.  An Order consistent with this Opinion will be entered.


Dated: <u> September 22, 2014 </u>          <u>  s/ Noel L. Hillman     </u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.